

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | | |
|---|---|---|
| **BRUCE JAMES NITZBAND,** | ) | Docket No.: 2016-03-1275 |
| **Employee,** | ) | |
| **v.** | ) | |
| **ARCONIC, INC.,** | ) | State File No.: 77092-2016 |
| **Employer,** | ) | |
| **and** | ) | |
| **AGRI GENERAL INSURANCE,** | ) | Judge Pamela B. Johnson |
| **Carrier.** | ) | |
| | ) | |

### EXPEDITED HEARING ORDER DENYING BENEFITS

This matter came before the undersigned Workers' Compensation Judge on March 21, 2017, upon the Request for Expedited Hearing filed by Bruce James Nitzband. The central legal issue is whether Mr. Nitzband came forward with sufficient evidence demonstrating he is likely to prevail at a hearing on the merits that his injury and need for medical treatment arose primarily out of and in the course and scope of his employment. For the reasons set forth below, this Court concludes Mr. Nitzband did not, and therefore he is not entitled to the requested benefits.

### History of Claim

For sixteen years, Mr. Nitzband worked for Arconic as a rotary furnace operator. On September 30, 2016, at the end of a sixteen-hour workday, Mr. Nitzband developed tingling in his right arm while pulling hardened aluminum scrap metal out of the long end of the trough. He continued to clean the trough when he felt a pop in his right shoulder while using a crow bar to pry a buildup of hardened aluminum out of a gap at the banjo end of the trough.[1] A portion of the work incident was captured on surveillance video. The parties dispute the mechanism of injury.

Mr. Nitzband reported the injury to his supervisor, and onsite medical personnel,

---

[1] Mr. Nitzband testified the gap in the trough that allowed aluminum to build up was repaired the next day and prior to Dr. Tutor's subsequent viewing of his work area.

1

Dr. David Tutor, evaluated him on the day of the incident. Mr. Nitzband indicated the onsite nurse provided him a panel of physicians with Dr. Tutor already selected. He signed it because Dr. Tutor was the only doctor physically present at the onsite medical clinic. Dr. Tutor ordered x-rays, which demonstrated unremarkable findings. Dr. Tutor also ordered a right-shoulder MRI, which showed a large full thickness rotator cuff tear and a preexisting long biceps tendon tear. Dr. Tutor further assigned restrictions of no use of the right arm for five days. The parties did not introduce Dr. Tutor's office notes.

Arconic thereafter provided Mr. Nitzband a panel of orthopedic physicians, and he selected Dr. Paul Becker of Knoxville Orthopedic Clinic. Dr. Becker evaluated Mr. Nitzband, reviewed the MRI scan, and diagnosed a traumatic rotator cuff tear. Dr. Becker recommended a rotator cuff repair and in the interim released Mr. Nitzband to return to temporary transitional duty with no use of the right hand.

Arconic's carrier submitted the surveillance video from the date of injury to Dr. Tutor and Dr. Becker. After reviewing the surveillance video, speaking with Arconic representatives, and visiting the work area, Dr. Tutor noted Mr. Nitzband was favoring the right arm prior to the use of the crowbar. He concluded that Mr. Nitzband's right shoulder injury was not the result of a September 30, 2016 incident and was significantly less than fifty percent the result of his work. Similarly, after reviewing the video, Dr. Becker noted, "[I]t appears that Mr. Nitzband was favoring his right shoulder before stated event (using crowbar)." In response to a questionnaire submitted by Arconic's carrier, Dr. Becker indicated, based upon his evaluation and review of the video, the injury to Mr. Nitzband's right shoulder was not more than fifty percent related to the alleged work incident.

Arconic thereafter denied Mr. Nitzband's claim on the basis that the authorized treating physician (ATP) determined the injury was not more than fifty percent related to the work incident on September 30, 2016, or his employment.

Mr. Nitzband underwent surgery on December 14, 2016, using his personal health insurance. Post-operatively, he participated in physical therapy. He denied right shoulder problems before the work incident.

In his Request for Expedited Hearing, Mr. Nitzband contended that Arconic and Drs. Tutor and Becker did not review the surveillance video correctly. He asserted the surveillance video showed him using a crowbar but "not in the place when the injury occurred." He further asserted he was "using crowbar at banjo part of [t]rough, not end of trough." He explained that he reported to the onsite medical clinic that his right arm first began to tingle while cleaning out the trough and, as he continued cleaning the trough, then his right shoulder popped while using the crowbar to remove hardened

2

aluminum from a gap at the banjo part of the trough.[2] Mr. Nitzband asserted that Arconic's and the doctors' incorrect understanding of how the injury occurred and incorrect viewing of the surveillance video led to the improper denial of his claim.

In Arconic's Response to Expedited Hearing, it averred Mr. Nitzband's injury did not arise out of or in the course of employment. Arconic argued that both Drs. Tutor and Becker concluded the injury was less than fifty percent related to the reported work incident. As such, without competent, admissible medical opinion to the contrary, it argued Mr. Nitzband's claim was properly denied and his Request for Expedited Hearing should be denied.

### Findings of Fact and Conclusions of Law

The following legal principles govern this case. Because this case is in a posture of an Expedited Hearing, Mr. Nitzband need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2016).

In order to prevail at a hearing on the merits, Mr. Nitzband must prove the compensability of the condition for which he seeks surgical treatment. To do so, he must show that his rotator cuff tear arose primarily out of and in the course and scope of his employment. *Id.* at § 50-6-102(14). This means he must show his rotator cuff tear was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence. *Id.* at § 50-6-102(14)(A). Further, he must show, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." *Id.* at § 50-6-102(14)(C). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. *Id.* at § 50-6-102(14)(D).

The Court first notes there is no dispute that Mr. Nitzband established a specific incident, or set of incidents, identifiable by time and place. This Court finds Mr. Nitzband to be credible. He unequivocally explained his actions at work on September 30, 2016, which led to the development of tingling in his right arm and followed by the pop in his right shoulder with numbness and severe pain. During the replay of the surveillance video, he identified his actions and pointed out when the tingling began in his arm while cleaning the trough that, within moments, resulted in his favoring his right arm. He additionally pointed out when he picked up the crowbar and walked off-screen

---

[2] Mr. Nitzband testified that the banjo part of the trough is outside the view of the surveillance video.

to remove the hardened aluminum from the gap at the banjo end of the trough. His testimony remained consistent during cross-examination. His testimony was forthright and without hesitation or uncertainty. This Court has no doubt that Mr. Nitzband experienced tingling in his right arm while perform his job duties and subsequently felt a pop with associated numbness and pain.

The question to be resolved then is whether he appears likely to prove he tore his rotator cuff during the work incident. Applying the foregoing principles to the facts of this case, the Court cannot find, at this time, that Mr. Nitzband is likely to prevail at a hearing on the merits in meeting his burden of proof.

As noted above, the parties submitted two medical opinions, which are entitled to particular consideration because Mr. Nitzband selected these doctors from panels offered by Arconic. Tennessee Code Annotated section 50-6-102(14)(E) (2016) establishes a rebuttable presumption of correctness for any causation opinion given by an authorized physician.

After reviewing the surveillance video, speaking with Arconic representatives, and visiting the work area, Dr. Tutor noted Mr. Nitzband was favoring the right arm prior to the use of the crowbar and concluded that Mr. Nitzband's right shoulder injury was not the result of a September 30, 2016 incident and was significantly less than fifty percent the result of his work.[3] Similarly, after reviewing the video, Dr. Becker noted, "[I]t appears that Mr. Nitzband was favoring his right shoulder before stated event (using crowbar)." Further, Dr. Becker indicated, based upon his evaluation and review of the video, the injury to Mr. Nitzband's right shoulder was not more than fifty percent related to the alleged work incident.

Consequently, it appears to the Court that both Drs. Tutor and Becker may have limited their consideration of the causal relationship between the work activity and the injury to an incorrect crowbar incident. In addition or alternatively, it further appears to the Court that Drs. Tutor and Becker considered the surveillance video demonstrating Mr. Nitzband favoring his right arm before picking up the crowbar as preexisting, without considering the work activities leading up to the tingling in Mr. Nitzband's right arm. Because the Court finds Mr. Nitzband credible and his version of events plausible, the Court concludes the causation statements of Drs. Tutor and Becker are not entitled to a presumption of correctness as their causation opinions are based on an incorrect version of the facts. However, Mr. Nitzband did not present a medical opinion from a medical doctor establishing that his work incident caused his rotator cuff tear.

Therefore, as a matter of law, this Court must hold that, at this time, Mr. Nitzband

---

[3] While the evidence indicates Dr. Tutor spoke with Arconic representatives, there is no evidence before the Court that Dr. Tutor similarly reviewed the surveillance video and took into account Mr. Nitzband's version of events.

did not come forward with sufficient evidence from which this Court can conclude that he is likely to prevail at a hearing on the merits. Accordingly, the requested benefits are hereby denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Nitzband' claim against Arconic, Inc. and its workers' compensation carrier for the requested benefits is denied at this time.

2. This matter is set for a Scheduling Hearing on **May 22, 2017**, at **1:30 p.m. Eastern Time**. The parties must call (865) 594-0091 or (toll-free) (855) 543-5041 to participate in the Scheduling Hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

**ENTERED this the 23rd day of March, 2017.**

**HON. PAMELA B. JOHNSON**
**Workers' Compensation Judge**

## APPENDIX

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Request for Decision on the Record
5. Employer's Response to Expedited Hearing

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Exhibits:
1. Affidavit
2. First Report of Work Injury, Form C-20
3. Wage Statement, Form C-41
4. Panels of Physicians, Form C-42,
5. Notice of Denial of Claim for Compensation, Form C-23

6. X-ray report
7. MRI report
8. Medical Certification and Causation Review by Dr. David Tutor
9. Medical Restrictions/Recommendations
10. Medical Records of Dr. Paul Becker, Ortho Tennessee
11. Video

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 23rd day of March, 2017.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| Bruce James Nitzband, Self-Represented Employee | X | | X | 2013 Swarthmore Lane Maryville, TN 37804 nitz71165@aol.com |
| James Wagner, Esq., Employer's Attorney | | | X | jwagner@fmsllp.com |

_____

**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**

6